## APPEAL OF F. C. BRECKENRIDGE ET AL.
## APPEAL OF J. K. EWING ET AL.
## APPEAL OF CHARLES P. FORD.

[ESTATE OF A. C. NUTT, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF FAYETTE COUNTY.

Argued May 14, 1889—Decided May 27, 1889.

[To be reported.]

1. Where the administrators of an insolvent estate collected a sum due their decedent on an account open at his death, but paid it directly upon the claim of a creditor of the estate, they are properly surcharged with the amount thereof on the adjudication of their accounts.

2. In such case, however, the accountants are entitled to be subrogated to the rights of the creditor, so paid, in the dividend awarded to the latter's claim against the estate, to an amount not exceeding the amount of the surcharge.

3. A claim to the amount of such surcharge, set up by one alleging himself to have been a partner with the decedent in the transaction out of which it arose, was properly disallowed in this case, the evidence being insufficient to establish the alleged partnership.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 262 January Term 1889, and Nos. 42, 45 July Term 1889, Sup. Ct.; court below, No. 23 June Term 1885, O. C.

On June 3, 1885, F. C. Breckenridge, Stephen R. Nutt and James Wells, administrators of the estate of A. C. Nutt, deceased, presented their first and partial account, showing a balance due the estate of $20,828.82. Exceptions having been filed, *Mr. A. H. Wycoff* was appointed auditor to hear and determine the same and to report distribution.

The auditor filed his report on February 15, 1886, from which it appeared that the estate of the decedent was insolvent, and that many claims aggregating a large amount were duly proved against it. Upon one of the exceptions filed to

the account by a creditor, the auditor surcharged the accountants with $9,314.90. This amount was a balance of an oil account with J. C. Fisher & Co., oil brokers, open at the time of the decedent's death, and such amount, upon facts which sufficiently appear in the opinion of this court, had been collected by the administrators and paid over by them to General S. M. Baily, then or late state treasurer. Mr. Baily, as state treasurer, was a creditor of the estate of A. C. Nutt, who had been his cashier, and in the distribution was entitled to a dividend of $5,928.75. The accountants, therefore, claimed a credit against the surcharge referred to to the extent of said dividend. The surcharge, however, was claimed by Charles P. Ford, surviving administrator of W. H. Coldren, deceased, on the ground that Nutt and Coldren were partners in the oil transactions out of which the surcharge arose. The auditor found that there was no partnership, as alleged by Coldren's administrator, and allowed the credit claimed by the accountants, reporting accordingly.

Various exceptions filed to the auditor's report were dismissed by the court, INGHRAM, P. J., and the auditor's report finally confirmed. Distribution being ordered, accordingly,

F. C. Breckenridge et al., accountants, took an appeal, No. 262, assigning as error the dismissal of their third exception, which was as follows:

3. The auditor erred in surcharging the accountants with $9,314.90, the amount received from J. C. Fisher & Co.

J. K. Ewing et al., creditors, took an appeal, No. 42, assigning as error, inter alia, the dismissal of their fourth exception, which was as follows:

4. The auditor erred in allowing the administrators of A. C. Nutt, deceased, the sum of $5,928.75.

Charles P. Ford, surviving administrator of W. H. Coldren, deceased, took an appeal, No. 45, assigning as error, inter alia, the dismissal of his first exception, which was as follows:

1. The auditor erred in not awarding the $9,314.90, paid by Fisher Brothers to W. H. Coldren's administrator.

These appeals were argued together.

*Mr. W. H. Playford*, for F. C. Breckenridge et al., administrators.

*Mr. S. L. Mestrezat* (with him *Mr. A. D. Boyd* and *Mr. R. H. Lindsey*), for J. K. Ewing, et al., creditors.

*Mr. Edward Campbell*, for Charles P. Ford, administrator, etc.

OPINION, MR. CHIEF JUSTICE PAXSON:

These appeals are all from the same decree, were argued together, and may be disposed of in one opinion. They will be considered in the order in which they are stated.

## 1. BRECKENRIDGE'S APPEAL.

There is but a single assignment of error in this appeal. It is as follows: "The Auditor erred in surcharging the account with $9,314.90, the amount received from J. C. Fisher & Co." In order to understand this assignment, it is necessary to state the facts briefly. Adam C. Nutt, the decedent, over whose estate the present controversy arises, died suddenly December 24, 1882. At the time of his death he was cashier of General Samuel M. Baily, the state treasurer. Immediately after his death it was discovered that his accounts were short in the office of the state treasurer, to the extent of $42,500. For some time prior to his death he had been speculating in oil, that is to say, he was buying oil on margins. At the time of his death he had an oil account with J. C. Fisher & Co. of Pittsburgh. Owing to a decline in oil, his margins were exhausted, and there was a small balance against him on the books of Fisher & Co. Had the administrators closed the account then, there would have been a loss. The state treasurer, believing that the money of the state had gone into this transaction, and being himself personally responsible for the deficit of his cashier, advised and urged the administrators of Captain Nutt not to close the account, but to carry it until oil should advance, and promised to margin the account if necessary. The administrators did so. Mr. Baily was not called upon, and did not put up any additional margins; the price of oil advanced, and as the result, it was afterwards sold at a profit of $9,314.90. This sum was received by the administrators upon the settlement of the account with Fisher & Co., and they receipted for it in their official capacity. Instead of holding it for distribu-

tion as an asset of Captain Nutt's estate, they paid it over to Mr. Baily. Upon the audit of their account in the Orphans' Court, they were surcharged with this sum, and it was to this surcharge that the assignment of error refers.

This statement of the facts renders an extended discussion of this branch of the case unnecessary. It is clear that Mr. Baily was not entitled to the money in question. While it may be true that the amount realized was saved by his advice and suggestion, the fact remains that the oil belonged to Captain Nutt's estate, and had there been a loss it would have fallen upon the estate. Mr. Baily might have secured the benefit of the advance in the oil, had he taken the contract with the Fishers upon himself by a transfer of the account. In such case he would have become the owner of the oil, and the estate of Mr. Nutt would have had no further responsibility in the matter. This he did not do. He merely offered to put up any additional margins required, if the administrators would continue to carry the oil. He had a strong motive to do this. He was a creditor of Mr. Nutt's estate to a large amount, and had every inducement to make the assets realize as much as possible. Had he taken an assignment of this oil from the administrators, and placed himself in Capt. Nutt's shoes, he would have been in a position to realize as owner all the benefit of a rise in the price of oil. As it was, he was only entitled to share in such benefit as a general creditor of the estate. There is no merit in this assignment.

## 2. EWING'S APPEAL.

The seventh assignment raises the only question which requires notice in this appeal. It is as follows: "The court erred in overruling and dismissing the third exception to the auditor's fourth report, which exception is as follows: 'The auditor erred in allowing the administrators of A. C. Nutt, deceased, the sum of $5,928.75.'" This sum was a dividend upon the $42,500 which Capt. Nutt owed the state, or rather state treasurer Baily, who had made the account good in the state treasury. The latter was therefore clearly a creditor of the estate in that sum. The administrators. of Nutt having been surcharged with the $9,314.90 which they had paid to Mr. Baily, were in equity entitled to retain the dividend on the

$42,500. In other words, they were entitled to be subrogated to Mr. Baily's rights in this respect. Mr. Baily does not object to this, and could not well do so, and no one else has any right to object.

### 3. FORD'S APPEAL.

The first asignment alleges that the court below erred in not awarding the $9,314.90 paid to accountants by Fisher Brothers, to W. H. Coldren's administrator. This assignment is based upon the allegation that in the matter of the oil account with Fisher Brothers, Captain Nutt and the said W. H. Coldren were copartners. Had such partnership existed, it is clear the amount of profit realized from the sales of oil would have been payable to Coldren as surviving partner, and after his death, to his administrators. Unfortunately for this claim, it was a claim merely, and was not sustained by evidence. There was no testimony in the case from which an auditor or a jury would have been justified in finding a partnership. The most that can be made of it is, that in one or two of his letters to Mr. Coldren, Mr. Nutt used the conventional "we" in referring to these oil transactions. The strongest illustration I can give is in his letter of July 27, 1882, where he says : " I think it is a good scheme to buy ten or twenty thousand at 58, and as it always goes against us at the start be prepared to average down until we get a full load. We must have the benefit of the oil boom when it comes. Now I want to go down to 50c again and we must follow it down if it starts for that figure," etc. These were merely instructions of a principal to his agent. His use of the pronoun " we" was probably in the editorial sense and does not mean anything. It is a common thing to write in this manner. Members of the bar often use it in writing to their clients, or about their clients' business, and would doubtless be surprised if such expressions could be used as evidence of a partnership. In the absence of any evidence that Coldren was personally interested in these transactions, or that he had contributed a dollar of money in the purchase of the oil, we must regard the case as entirely barren of any proof of a partnership.

The decree is affirmed in each case, and the appeal dismissed at the costs of the appellants.